UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IN RE GRAND JURY WITNESS,

EX REL UNITED STATES OF AMERICA

v.

BUSHAWN SHELTON,

Defendant.

---

REYES, M.J.

**NOTICE OF MOTION TO QUASH SUBPOENA**

Case No.

**MISC 18-3009**

 

**PLEASE TAKE NOTICE** that upon the attached declaration by Florian Miedel, Esq., memorandum of law, and all prior papers and proceedings herein, Takeisha Shelton, having been subpoenaed to testify before the Grand Jury in the above captioned matter, will move this Court on ____, 2018, for an order:

    1. Quashing Takeisha Shelton's subpoena for testimony and documents under Fed. Rule Crim. Proc. 17(c)(2) on the grounds that as the wife of the grand jury's target, she cannot be compelled to testify and produce evidence against her husband;

    2. Granting such further relief as this Court deems just and proper.

DATED: November 13, 2018

Respectfully Submitted,

_____

Florian Miedel, Esq.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004

TO: Clerk of the Court, EDNY
AUSA Lindsay Gerdes

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IN RE GRAND JURY WITNESS,

EX REL UNITED STATES OF AMERICA

v.

BUSHAWN SHELTON,

Defendant.

**DECLARATION**

Case No.

---

I, Florian Miedel, Esq., hereby declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

1. I am an attorney admitted to practice in the Eastern District of New York. I have been retained by Takeisha Shelton to represent her in connection with a subpoena she received to testify before a grand jury investigating her husband, Bushawn Shelton.

2. The statements contained in this Declaration are based on information and belief, unless otherwise indicated.

3. On October 11, 2018, Bushawn Shelton was arrested and charged by complaint in the Eastern District of New York with murder for hire conspiracy and related weapons charges. He has since been indicted under indictment number 18-Cr-609.

4.  Bushawn Shelton is legally married to Takeisha Shelton. *See* Exhibit A, Marriage Certificate. Prior to Mr. Shelton's arrest, the couple lived together and maintained an intimate marital relationship. They do not have children.

5.  In late October 2018, Takeisha Shelton was served with a subpoena to testify on October 31, 2018 before a grand jury investigating her husband, Bushawn Shelton.

6.  On October 30, 2018, Ms. Shelton retained my services, and I asked the assistant United States Attorney, Lindsay Gerdes, for more time. Ms. Gerdes agreed, and rescheduled Ms. Shelton's testimony before the grand jury to November 14, 2018.

7.  On the same day, Ms. Gerdes also issued a new subpoena, which requested not only Ms. Shelton's testimony, but also her production of documents. *See* Exhibit B, Grand Jury Subpoena.

8.  For the reasons set forth in the accompanying memorandum of law, Takeisha Shelton now moves to quash the subpoena for her testimony and documents on the grounds that she cannot be compelled to testify and produce evidence against her husband in a criminal proceeding.

DATED: November 13, 2018

*[signature]*

Florian Miedel, Esq.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004

# Exhibit A

# STATE OF NEW YORK
## DEPARTMENT OF HEALTH
## AFFIDAVIT, LICENSE and CERTIFICATE OF MARRIAGE

COUNTY: Clinton
CITY/TOWN: Dannemora
DISTRICT NUMBER: 957
REGISTER NUMBER: 37

STATE FILE NUMBER (THIS SPACE FOR STATE USE ONLY)
☐ SUPPLEMENTAL FILE

### FROM THE GROOM

1. A. FULL NAME: Bushawn Shelton (FIRST / MIDDLE / CURRENT SURNAME)
   B. BIRTH NAME, IF DIFFERENT:
   C. SURNAME AFTER MARRIAGE (OPTIONAL - SEE REVERSE):
   D. SOCIAL SECURITY NUMBER: [redacted]
2. RESIDENCE A. NY (STATE)  B. Clinton (COUNTY)
   C. CHECK ONE: ☐ CITY ☐ TOWN ☐ VILLAGE
   SPECIFY: Dannemora
   D. STREET ADDRESS: Cook Street   ZIP: 12929
   E. IS RESIDENCE WITHIN LIMITS OF CITY OR INCORPORATED VILLAGE? ☐ YES ☐ NO
3. A. AGE: [redacted]   3B. DATE OF BIRTH: [redacted]
4. EMPLOYMENT
   A. USUAL OCCUPATION: Unemployed
   B. TYPE OF INDUSTRY OR BUSINESS:
5. PLACE OF BIRTH: Brooklyn, NY
6. FATHER
   A. NAME: Kirk Pritchard
   B. COUNTRY OF BIRTH: Trinidad
7. MOTHER
   A. MAIDEN NAME: Josan Shelton
   B. COUNTRY OF BIRTH: USA
8. NUMBER OF THIS MARRIAGE: 1
9. PREVIOUS MARRIAGES
   A. NUMBER OF PREVIOUS MARRIAGES WHICH ENDED BY DIVORCE / CIVIL ANNULMENT / DEATH
   B. HOW DID LAST MARRIAGE END? (3) ☐ DIVORCE (3) ☐ ANNULMENT (2) ☐ DEATH
   C. DATE LAST MARRIAGE ENDED? MONTH/DAY/YEAR
   D. ARE ANY FORMER SPOUSE(S) ALIVE? ☐ YES ☐ NO

### FROM THE BRIDE

11. A. FULL NAME: Takeisha Escalona (FIRST / MIDDLE / CURRENT SURNAME)
    B. BIRTH NAME (MAIDEN NAME), IF DIFFERENT:
    C. SURNAME AFTER MARRIAGE (OPTIONAL - SEE REVERSE): Shelton
    D. SOCIAL SECURITY NUMBER: [redacted]
12. RESIDENCE A. NY (STATE)  B. Kings (COUNTY)
    C. CHECK ONE: ☐ CITY ☐ TOWN ☐ VILLAGE
    SPECIFY: Bronx
    D. STREET ADDRESS: [redacted]   ZIP: [redacted]
    E. IS RESIDENCE WITHIN LIMITS OF CITY OR INCORPORATED VILLAGE? ☐ YES ☐ NO
13. A. AGE: [redacted]   3B. DATE OF BIRTH: [redacted]
14. EMPLOYMENT
    A. USUAL OCCUPATION: Stewardess
    B. TYPE OF INDUSTRY OR BUSINESS: Airline
15. PLACE OF BIRTH: Brooklyn, NY
16. FATHER
    A. NAME: Ricardo Escalona
    B. COUNTRY OF BIRTH: Panama
17. MOTHER
    A. MAIDEN NAME: Antonieta Brown
    B. COUNTRY OF BIRTH: Panama
18. NUMBER OF THIS MARRIAGE: 1
19. PREVIOUS MARRIAGES

---

10. IF PREVIOUSLY DIVORCED OR ANNULLED, PROVIDE THE FOLLOWING INFORMATION
    DATE OF DECREE / PLACE ISSUED / AGAINST WHOM - SELF SPOUSE
    1ST / 2ND / 3RD / 4TH

20. IF PREVIOUSLY DIVORCED OR ANNULLED, PROVIDE THE FOLLOWING INFORMATION
    (same columns)

I duly swear/affirm, depose and say, that to the best of my knowledge and belief that the information I provided is true and that I declare that no legal impediment exists as to my right to enter into the marriage state.

21. SIGNATURE OF GROOM: [signature]
22. SIGNATURE OF BRIDE: Escalona
23. SUBSCRIBED AND SWORN TO/AFFIRMED BEFORE ME SIGNATURE OF TOWN OR CITY CLERK: [signature]  DATE: 10/5/09

This license authorizes the marriage in New York State of the bride and groom named above by any person authorized by New York Domestic Relations Law §11 to perform marriage ceremonies within New York State. THIS LICENSE VALID IN NEW YORK STATE ONLY.
☐ If checked, this license is to be used only for the purpose of a second or subsequent ceremony.

### LICENSE

24. TOWN OR CITY CLERK
    NAME (PRINT): Sherry Katz
    SIGNATURE: Sherry Katz   DATE: 10/5/09
    MAILING ADDRESS: Cook St Dannemora NY 12929

25. A. SOLEMNIZATION PERIOD BEGINS: TIME 10:15 AM/PM   MONTH 10 DAY 5 YEAR 09
    B. SOLEMNIZATION PERIOD ENDS AT MIDNIGHT ON: MONTH 12 DAY 5 YEAR 09

### CERTIFICATE

I CERTIFY THAT THE MARRIAGE I SOLEMNIZED OF THE PERSONS NAMED ABOVE OCCURRED ON THE DATE AND AT THE TIME AND PLACE INDICATED.

26. SOLEMNIZATION OCCURRED: TIME 1:03 PM   MO 10 DAY 10 YEAR 09
27. TYPE OF CEREMONY: ☐ RELIGIOUS ☑ CIVIL ☐ OTHER, SPECIFY:
28. PLACE WHERE MARRIAGE OCCURRED
    A. STATE: NEW YORK   B. COUNTY: Clinton
    C. LOCATION OF CEREMONY (CHECK ONE AND SPECIFY): ☐ CITY OF ☑ TOWN OF ☐ VILLAGE OF
    SPECIFY: Dannemora

29. OFFICIANT
    NAME (PRINT): Kathleen Leary   TITLE: Former J/Justice
    SIGNATURE: Kathleen Leary   DATE: 10/10/09
    MAILING ADDRESS: Turner Rd Morrisonville NY 12962

30. WITNESS TO CEREMONY
    NAME (PRINT): Antonieta Escalona Hercule
    SIGNATURE: Antonieta Hercule

31. WITNESS TO CEREMONY
    NAME (PRINT): Josan Shelton
    SIGNATURE: Josan Shelton

DOH-98 (05/2006)

# Exhibit B

F. # 2016R01646

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To: Takeisha Shelton
DOB: 08/02/1982

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: U.S. District Court, Eastern District of New York 225 Cadman Plaza East, 5th Floor, Room N547 Brooklyn, New York 11201 | Date and Time: Wednesday, November 14, 2018 at 2pm |
|---|---|

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

All documents pertaining to sales and contracts for MMB Certified and/or any affiliated entity from January 1, 2018 to the present.

Date: 10/30/2018

**DOUGLAS C. PALMER**
*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:

Assistant U.S. Attorney Lindsay K. Gerdes
U.S. Attorney's Office, Eastern District of New York
271 Cadman Plaza East, Brooklyn, New York 11201
lindsay.gerdes@usdoj.gov
(718) 254-6155

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IN RE GRAND JURY WITNESS,

EX REL UNITED STATES OF AMERICA

v.

BUSHAWN SHELTON,

Case No.

Defendant.

---

# TAKEISHA SHELTON'S MEMORANDUM
# OF LAW IN SUPPORT OF HER MOTION TO QUASH

FLORIAN MIEDEL, ESQ.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004
Tel: (212) 616-3042

*Attorney for Takeisha Shelton*

## **ARGUMENT**

### A. **Because Takeisha Shelton Invokes the Adverse Spousal Testimony Privilege, Ms. Shelton Cannot Be Compelled To Testify Against Her Husband**

Federal Courts interpret testimonial privileges by reference to common law and "in light of reason and experience." Fed. R. Evid. 501. *In re Witness Before Grand Jury*, 791 F.2d 234, 235 (2d Cir. 1986). Over time, two distinct marital privileges developed under common law. The confidential marital communications privilege protects the intimacy of private marital communications and can be asserted by either spouse in any legal proceeding. *See United States v. Premises Known as 281 Syosset Woodbury Road*, 71 F.3d 1067, 1070 (2d Cir. 1995). The adverse spousal testimony privilege, on the other hand, permits a person to refuse to testify against his or her spouse in a criminal proceeding, regardless of topic. This privilege is justified by "its perceived role in fostering the harmony and sanctity of the marriage relationship" and is designed to protect that marital harmony by ensuring that spouses will not be forced to bear witness against each other. *Trammel v. United States*, 445 U.S. 40, 44 (1980). The privilege is "broadly aimed at protecting marital harmony" and therefore protects a person from being required to offer evidence against her spouse. *281 Syosset*, 71 F.3d at 1070.[1]

Takeisha Shelton is legally married to Bushawn Shelton. *See* Exhibit A to Florian Miedel Affirmation. The government has subpoenaed Ms. Shelton to appear

---

[1] The Supreme Court has ruled that the adverse spousal testimony privilege can only be asserted by the testifying spouse, not the spouse against whom the evidence is sought. *See Trammel*, 445 U.S. at 53.

before a grand jury investigating her husband.[2] Through her counsel, Ms. Shelton has notified the government that she intends to invoke the adverse spousal testimony privilege and will not testify or provide evidence against her husband, Mr. Shelton. The government has not withdrawn the subpoena. Accordingly, Ms. Shelton respectfully moves, pursuant to Fed. R. Crim. Proc. 17(c)(2), to quash the subpoena requiring her to testify and produce evidence before a grand jury investigating her husband. As the law cited above makes clear, Ms. Shelton cannot be compelled to offer evidence against her husband in a criminal proceeding, and her motion to quash should therefore be granted.[3]

### B. Takeisha Shelton Can Only Be Compelled To Provide Evidence Against Other Targets of the Grand Jury Investigation If She Is Given Full Use-Fruits Immunity and Other Assurances

In response to Ms. Shelton's assertion of the adverse spousal testimony privilege, the government stated that Bushawn Shelton was not the only target of the

---

[2] Although the subpoena itself does not state the nature of the grand jury investigation (*see* Exhibit B), there is no dispute that the grand jury to which Ms. Shelton has been subpoenaed is investigating crimes allegedly committed by Mr. Shelton. Mr. Shelton has been indicted under Indictment number 18-Cr-609.

[3] In an unpublished decision in *In the Matter of Jane Doe, a Grand Jury Witness*, 2001 WL 1152816 (EDNY 2001), former judge Gleeson opined in *dicta* that the adverse spousal testimony privilege may not be available to a grand jury witness. That opinion is incorrect, as evidenced by the number of adverse spousal testimony cases in the Second Circuit involving grand jury witnesses. *See e.g. In re Witness Before Grand Jury*, 791 F.2d 234, 235 (2d Cir. 1986); *In the Matter of the Grand Jury Subpoena of Jean Ford*, 756 F.2d 249 (2d Cir. 1985); *In re Grand Jury Subpoena United States*, 755 F.2d 1022 (2d Cir. 1985), *vacated on other grounds*. *See also In re Grand Jury Subpoena Koecher*, 601 F. Supp. 385, 386 (S.D.N.Y. 1984) ("The privilege against adverse spousal testimony is applicable in proceedings before the grand jury to the same extent that it is applicable in a criminal trial in federal court." (internal citations omitted)).

grand jury's investigation, and that Ms. Shelton could not invoke the privilege if her evidence and testimony were used only against other targets of the investigation, not her husband.

It is true that the adverse spousal privilege only applies to compelled testimony against a spouse. However, as set forth below, far stricter limitations on the use of such evidence must be proffered by the government than the immunity informally suggested so far. Specifically, evidence by Ms. Shelton can only be compelled if presented to a different grand jury than the one investigating her husband, elicited by a different prosecutor walled off from the investigation against her husband, and if assurances are given that neither the evidence, nor fruits thereof, directly or indirectly, can be used against Bushawn Shelton.

*In the Matter of the Grand Jury Subpoena of Jean Ford*, 756 F.2d 249 (2d Cir. 1985) is instructive. In that case, the witness was subpoenaed to testify before a grand jury that had already returned an indictment against the witness's wife, as well as against eight other individuals. The witness moved to quash, asserting the adverse spousal testimony privilege. In response, the government filed an affidavit by the assistant United States Attorney in charge of the grand jury investigation, in which he set forth a procedure for ensuring that the witness's evidence would not be used against his wife. *Id.* at 251. Specifically, the affidavit proposed the following restrictions:

- The witness would testify before a *different* grand jury than the one investigating his wife.
- The witness would be questioned by an AUSA not connected to the underlying investigation, who would then confer with other AUSAs similarly unconnected to determine if the witness's testimony was of sufficient value with regard to the wife's co-defendants.

4

- If the evidence by the witness was sufficiently valuable, then the wife's indictment would be severed from that of her co-defendants and would be handled by an AUSA who had no connection with the investigation of her co-defendants.
- Similarly, any superseding indictment against the wife would be the product of an independent grand jury obtained by an AUSA with no connection to the joint investigation.
- Neither the witness's evidence, nor any of its fruit, would be used in any way, directly or indirectly against the wife.

*Id.*

The district court determined that the government's proposed procedure "was sufficient to insure that no grand jury testimony elicited from appellant would be used, either directly or indirectly, against appellant's wife," and ordered the witness to comply with the subpoena. *Id.* at 252. The Second Circuit affirmed the district court's order, holding that the procedure proposed by the government sufficiently protected the witness from the concern that his testimony would, in any way be used against his wife, and noted that it was the "government's burden to show that any investigation or prosecution of [the wife] has not been tainted by the testimony of appellant." *Id.* at 254.

A similar result was reached by the Third Circuit in *In re Grand Jury*, 111 F.3d 1083 (3d Cir. 1997). There, the government issued a subpoena *duces tecum* to the wife of a subject of a grand jury investigation, seeking testimony and physical evidence. The wife filed a motion to quash the subpoena, asserting the adverse spousal testimony privilege, and the government countered with an affidavit by the assistant United States Attorney in charge of the grand jury investigation, promising:

- That the government would not use the wife's testimony or its fruits, either directly or indirectly, against the husband;

- that the government would not obtain an indictment against the husband from the grand jury who heard the wife's testimony and considered her evidence;
- that "in the event that a separate grand jury indicted [the husband], the government would bear the burden of establishing that the evidence it used to indict [the husband] and the evidence it would use at [the husband's] trial were derived from legitimate sources wholly independent of [the witness's] testimony and production of the tapes."

*Id.* at 1084-85. The district court concluded that the government's detailed assurances sufficiently protected the husband to overcome the privilege. *Id.* at 1085. The Third Circuit agreed, holding:

> [I]n the case before us the government promised the witness that it would not use her testimony or the fruits thereof, in any criminal proceeding against her husband or seek an indictment before the same grand jury before which she was testifying. The government has undertaken the burden of showing the independent source of any evidence it uses should it subsequently indict the witness's husband. This use-fruits immunity . . . is sufficient to defeat the privilege against adverse spousal testimony and to compel the witness to testify.

*Id.* at 1089.

Here, the government has asserted informally that there may be other subjects or targets of the grand jury investigation against whom Takeisha Shelton could offer relevant evidence. First, the government should clarify in an *ex parte* or redacted submission that there are indeed other people being investigated by the grand jury in connection to Mr. Shelton, and that Takeisha Shelton's testimony is or would be useful and relevant in such an investigation. Second, if the Court accepts such a proffer, the government should then file an affidavit similar to those submitted in *Grand Jury Subpoena of Jean Ford*, 756 F.2d 249 (2d Cir. 1985) and *In re Grand Jury*, 111 F.3d 1083 (3d Cir. 1997), providing the same kind of use-fruit immunity

6

and assurances, including that a separate grand jury would be empaneled to hear the testimony of Ms. Shelton.

As the lawfully married wife of Bushawn Shelton, Takeisha Shelton should not be forced to choose between her own liberty and having to bear witness against her husband. Although some of the historic bases for a blanket spousal privilege have been debunked, *see Trammel*, 445 U.S. at 44, 52, the adverse spousal privilege continues to serve the "public interest in marital harmony" and remains an important protector of the sanctity of marriage. Accordingly, the Court should quash the subpoena for Ms. Shelton's testimony and documents unless the government can both demonstrate the actual need for such testimony against targets other than her husband, and can provide sufficient assurances that no evidence or testimony offered by Ms. Shelton, or their fruits, will be used directly or indirectly against her husband.

## **CONCLUSION**

For all the foregoing reasons, Takeisha Shelton respectfully requests that the Court grant the relief she seeks herein, or any relief the Court deems just and proper.

Dated: New York, New York
November 13, 2018

Respectfully Submitted

By: _____
Florian Miedel, Esq.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004

*Attorney for Takeisha Shelton*